James L. Bromley
Christian P. Jensen
Jared D. Ham
Angela Zhu
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for SVB Financial Trust*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SVB FINANCIAL GROUP,[1]<br><br>      Debtor. | Bankruptcy Case No. 23-10367 (MG) |
| SVB FINANCIAL TRUST,<br><br>      Plaintiff,<br>  v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank,<br><br>      Defendants. | Civil Case No. 26 Civ. 0417 (VSB)<br><br>Adv. Proc. No. 25-01150 (MG) |

**SVB FINANCIAL TRUST'S OPPOSITION TO THE MOTION OF**
**THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER**
**FOR SILICON VALLEY BANK, FOR AN ORDER WITHDRAWING THE**
**<u>REFERENCE OF ADVERSARY PROCEEDING</u>**

---

[1]  The last four digits of SVB Financial Group's tax identification number are 2278.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

     A.     The Bonds. ...............................................................................................................3

     B.     The Forgeries. ..........................................................................................................4

     C.     The Insurance Dispute. .............................................................................................5

     D.     SVB's Failure and the Chapter 11 Proceeding. .........................................................6

     E.     FDIC-R'S Motion in the North Carolina Proceeding. ...............................................7

     F.     SVBFT's Adversary Proceeding. ..............................................................................8

ARGUMENT ..............................................................................................................................8

I.     The Standard for Mandatory Withdrawal Is Not Met. ............................................................8

     A.     The Adversary Proceeding Is a Contract Dispute That Raises Bankruptcy
           Law Issues. ............................................................................................................. 9

     B.     Even if FIRREA Is Applicable, Only Straightforward Application Is
           Required. ................................................................................................................ 12

II.     The FDIC-R Has Not Shown Cause for Permissive Withdrawal. .....................................13

     A.     The Bankruptcy Court Has Authority to Finally Adjudicate the
           Adversary Proceeding. ........................................................................................... 14

     B.     SVBFT Asserts an Equitable Claim for Declaratory Relief. ............................... 19

     C.     Efficiency Is Served by Keeping the Adversary Proceeding with the
           Bankruptcy Court. .................................................................................................. 19

     D.     The Adversary Proceeding Is Not a Case of Forum Shopping. ............................ 21

     E.     Denying the Motion for Withdrawal Facilitates Uniformity in the
           Administration of Bankruptcy Law. ...................................................................... 21

CONCLUSION...........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arbco Cap. Mgmt., LLP,*
479 B.R. 254 (S.D.N.Y. 2012)................................................................13, 14, 19, 20

*In re Atari, Inc.,*
2016 WL 1618346 (S.D.N.Y. April 20, 2016) ................................................18, 20

*In re Bos. Generating, LLC,*
2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010)...........................................................12

*In re CIS Corp.,*
140 B.R. 351 (S.D.N.Y. 1992).................................................................................13

*Citizens Cent. Bancorp, Inc.* v. *United States,*
2017 WL 10544024 (Fed. Cl. Sept. 7, 2017)...........................................................17

*Cognetta* v. *Bonavita,*
330 F. Supp. 3d 797 (E.D.N.Y. 2018) ....................................................................19

*In re Connie's Trading Corp.,*
2014 WL 1813751 (S.D.N.Y. May 8, 2014) ..............................................................9

*In re EMS Fin. Servs., LLC,*
491 B.R. 196 (E.D.N.Y. 2013) ................................................................................19

*In re Enron Corp.,*
2005 WL 1185804 (S.D.N.Y. May 18, 2005) .............................................18, 19, 22

*In re Enron Corp.,*
318 B.R. 273 (S.D.N.Y. 2004).................................................................................18

*Ensign Fin. Corp.* v. *Fed. Deposit Ins. Corp.,*
785 F. Supp. 391 (S.D.N.Y. 1992)...........................................................................16

*In re Extended Stay, Inc.,*
466 B.R. 188 (S.D.N.Y. 2011)...........................................................9, 13, 19, 20

*Fed. Hous. Fin. Agency* v. *JPMorgan Chase & Co.,*
902 F. Supp. 2d 476 (S.D.N.Y. 2012).....................................................................11

*In re FKF 3, LLC,*
2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016).........................................................13

-i-

*In re Formica Corp.*,
   305 B.R. 147 (S.D.N.Y. 2004)......................................................................................18

*Houbigant, Inc.* v. *ACB Mercantile, Inc.*,
   185 B.R. 680 (S.D.N.Y. 1995)........................................................................................8

*In re Ladder 3 Corp.*,
   581 B.R. 7 (Bankr. E.D.N.Y. 2018)...............................................................................14

*In re Lehman Bros. Holdings Inc.*,
   480 B.R. 179 (S.D.N.Y. 2012)............................................................................19, 20, 22

*In re Lyondell Chem. Co.*,
   445 B.R. 277 (Bankr. S.D.N.Y. 2011)...........................................................................18

*In re Lyondell Chem. Co.*,
   467 B.R. .......................................................................................................................19

*In re Madison Bentley Assocs., LLC*,
   2016 WL 5793990 (S.D.N.Y. Sept. 27, 2016).............................................................19

*In re Motivation Res., Inc.*,
   158 B.R. 184 (Bankr. C.D. Cal. 1993)..........................................................................17

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993)..................................................................................... *passim*

*Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC* v. *Greiff*,
   617 B.R. 198 (S.D.N.Y. 2020).......................................................................................13

*Shugrue* v. *Air Line Pilots Ass'n, Int'l*,
   922 F.2d 984 (2d Cir. 1990)............................................................................................8

*Stern* v. *Marshall*,
   564 U.S. 462 (2011)..........................................................................................13, 14, 16

*In re Texaco Inc.*,
   84 B.R. 911 (S.D.N.Y. 1988).........................................................................................10

*Travelers Indem. Co.* v. *Bailey*,
   557 U.S. 137 (2009)......................................................................................................18

*United Illuminating Co.* v. *Enron Power Mktg., Inc.*,
   2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003)............................................................18

*In re Vicars Ins. Agency, Inc.*,
   96 F.3d 949 (7th Cir. 1996) .............................................................................................9

*In re XO Commc'ns, Inc.*,
   301 B.R. 782 (Bankr. S.D.N.Y. 2003) ...................................................................................15

**Statutes**

12 U.S.C. § 1819...........................................................................................................................16

12 U.S.C. § 1821(d)(2)(A)(i) ...................................................................................................10, 11

12 U.S.C. § 1821(d)(2)(B) ............................................................................................................10

12 U.S.C. § 1821(d)(13)(D)...........................................................................................................11

12 U.S.C. § 1821(j).........................................................................................................10, 17, 20

12 U.S.C. § 1825(b)(3) ..................................................................................................................12

28 U.S.C. § 157(b)(3) ....................................................................................................................18

SVB Financial Trust ("SVBFT"), as successor in interest to SVB Financial Group ("SVBFG"), respectfully submits this opposition to the Motion of the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Silicon Valley Bank ("FDIC-R"), to withdraw the reference of the above-captioned adversary proceeding (Dkt. No. 1, the "Motion").  In support of its opposition, SVBFT states as follows:

## PRELIMINARY STATEMENT

FDIC-R seeks to withdraw the reference of an adversary proceeding brought by SVBFT concerning entitlement to proceeds under two fidelity insurance bonds (the "Bonds").  The underlying adversary proceeding (the "Adversary Proceeding") seeks declaratory relief establishing that, under the plain terms of the Bonds and the Bankruptcy Court's own orders— including the Bankruptcy Court's order establishing the deadline to file proofs of claim against the Debtor (the "Bar Date Order") (Case No. 1:23-bk-10367 (MG) (Bankr. S.D.N.Y.) ("Ch. 11 Dkt."), Dkt. No. 373), and the Bankruptcy Court's order (the "Confirmation Order") (*Id.* at 1379) confirming the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan")—FDIC-R is barred from asserting any rights to the Bond proceeds and may not advance any late claims relating to those proceeds.  FDIC-R contends that withdrawal of the reference is required or, alternatively, warranted as a matter of discretion.  It is wrong on both counts.

*First*, mandatory withdrawal does not apply because FIRREA is not the gravamen of this dispute. The core questions are contractual and bankruptcy-specific:  who is entitled to payment under the Bonds as written, and whether FDIC-R waived or forfeited any claims to proceeds by failing to assert those before the Chapter 11 Case's Claims Bar Date.  FIRREA enters the case, if at all, only as a contingent defense that depends on FDIC-R first establishing that the

Bond proceeds are assets of the failed bank—a merits assumption this Court cannot accept as a basis for withdrawal. Section 157(d) of title 28 of the United States Code does not permit a party to assume its own success on the merits and then invoke that assumption to compel withdrawal.

Even if FIRREA were implicated, its application here would require only straightforward application of settled statutory provisions, not "substantial and material" interpretation. Courts in this district consistently hold that mandatory withdrawal is inappropriate where the bankruptcy court need only apply a federal statute to particular facts. FDIC-R relies on familiar FIRREA provisions—the succession clause, asset-collection authority, and jurisdictional limitations—and does not identify any novel question of statutory meaning or conflict with the Bankruptcy Code that would require Article III resolution.

*Second*, permissive withdrawal fares no better. The relevant factors weigh heavily against removing this dispute from the Bankruptcy Court. As an initial matter, the Bankruptcy Court may finally adjudicate the Adversary Proceeding because it involves public rights. SVBFT is in a dispute with FDIC-R—a government entity that has expressly argued that it should not be treated as a private banking entity for purposes of the insurance dispute—and the claims challenge FDIC-R's asserted exercise of federal receivership authority to override SVBFT's contractual rights. In addition, the Adversary Proceeding requires interpretation and enforcement of the Bankruptcy Court's own orders, including the Bar Date Order, Confirmation Order, and confirmed Plan, an area in which bankruptcy courts possess core jurisdiction and final adjudicative authority.

Perhaps more importantly, considerations of judicial efficiency overwhelmingly favor leaving this matter where it is. The Bankruptcy Court has presided over SVBFG's Chapter 11 case for nearly three years and is deeply familiar with the relationship between the bank and the holding company, the consequences of the FDIC receivership, the role FIRREA has played

-2-

throughout the case, and the purpose and effect of the claim bar date and Confirmation Order. That familiarity simply cannot be replicated in a new forum. Withdrawing the reference at this stage would fragment adjudication, risk inconsistent rulings, and impose unnecessary duplication of effort.

All remaining considerations are, at best, neutral and do not justify withdrawal. Taken together, the core nature of the dispute, the Bankruptcy Court's ability to finally resolve it, and the substantial efficiency gains from keeping the matter before the court most familiar with the underlying case confirm that permissive withdrawal is unwarranted.

For these reasons, the Court should deny FDIC-R's Motion and allow the Bankruptcy Court to adjudicate the Adversary Proceeding.

## BACKGROUND

### A.   The Bonds.

In August 2020, Federal Insurance Company ("Chubb") and Berkley Regional Insurance Company ("Berkley" and, together with Chubb, the "Insurers") issued the Bonds to SVBFG: Chubb issued the primary Financial Institution Bond (the "Chubb Bond"), and Berkley issued an Excess Follow Form Bond (the "Berkley Bond") that generally incorporates the terms of the Chubb Bond and provides coverage for losses in excess of the limits available under the Chubb Bond. (Case No. 1:25-ap-01150 (Bankr. S.D.N.Y.) ("Adv. Dkt."), Dkt. No. 1 ("Compl.") ¶ 14.) Both Bonds, and all amendments thereto, identify SVBFG as the "first named Assured" and repeatedly state that the Bonds are "[i]ssued to" and "in favor of" SVBFG. Silicon Valley Bank ("SVB" or the "Bank") is not specifically named in either of the Bonds, but it qualifies as an "Assured" as one of SVBFG's subsidiaries. (*Id*. ¶ 15.) Relevant here, the Bonds provided "Extended Forgery" coverage, which covers losses resulting from credit extensions in reliance on documents bearing a forgery. (*Id*. ¶ 14.)

The Chubb Bond's "Joint Assured" provision (the "Joint Assured Provision"), incorporated by the Berkley Bond, affords SVBFG specific rights as the first named Assured under the Bond. (*Id.* ¶ 15.) *First*, the Joint Assured Provision expressly states that "[a]ll losses and other payments, if any, payable by the [Insurers] shall be payable to the first named ASSURED without regard to such ASSURED's obligations to others." (*Id.*; *see also id*. Ex. A at 11 (emphasis added).) *Second*, the Joint Assured Provision provides that only SVBFG has a "direct beneficiary interest in" and "right of action" under the Bond. (*Id*. ¶ 15.)  It states that "[e]ach and every other ASSURED shall be conclusively deemed to have consented and agreed that none of them shall have any direct beneficiary interest in or any right of action under this Bond and neither this Bond nor any right of action shall be assignable." (*Id.*; *see also id*. Ex. A at 11 (emphasis added).) Together, these provisions make clear that (i) SVBFG is the only entity with a direct beneficiary interest in the Bonds and (ii) all payments for covered losses are to be made to SVBFG. (*Id*. ¶ 15.)

In addition, the Joint Assured Provision states that "[o]nly the first named ASSURED shall be deemed to be the sole agent of the others for all purposes under this Bond, including but not limited to the giving or receiving of any notice or proof required to be given and for the purpose of effecting or accepting any amendments to or termination of this Bond." (*Id.* ¶ 16; *see also id*. Ex. A at 11.)  Consistent with this provision, the Bonds contemplate that notices, communications, and amendments are to be given or accepted exclusively by SVBFG, rather than by any individual subsidiary. (*Id*. ¶ 16.)

B.    **The Forgeries.**

On December 1, 2020, Elliot Smerling approached the Bank seeking a line of credit. Smerling held himself out as the founder of the JES Global Capital III, L.P. (the "JES Fund") and its general partner, JES Global Capital GP III, LLC (the "JES General Partner" and, together with the JES Fund, the "JES Entities"), represented that the JES Fund was a legitimate private equity

fund with substantial capital commitments and investments. (*Id.* ¶ 17.) In support of his request, Smerling provided subscription and partnership agreements that were purportedly executed by each of the Limited Partners in the JES Fund. (*Id.*) The Bank entered into a Loan and Security Agreement (the "Loan Agreement") with the JES Entities, providing a $150 million line of credit. (*Id.* ¶ 18.) Shortly thereafter, at the request of the JES Fund, the Bank wired $95 million to an account that Smerling claimed was associated with the JES Fund. (*Id.* ¶ 18.) It was later discovered that Smerling had supplied forged documents to acquire the credit line. (*Id.* ¶ 19.) On February 26, 2021, the Bank sent Smerling a notice declaring an Event of Default. (*Id.*) That same day, Smerling was arrested by FBI agents in Florida and later pled guilty to several charges, admitting that he forged signatures of purported investors and created fake documents to induce SVB and other banks to loan him funds. (*Id.* ¶ 19.) Ultimately, SVBFG's and its affiliates' losses arising from this forgery scheme were approximately $73 million, plus additional interest, charges, and fees, as well as other damages. (*Id*. ¶ 20.)

### C.    The Insurance Dispute.

In March 2021, SVBFG sought coverage for these losses under the Bonds (the "Insurance Claim"), but the Insurers denied coverage. (*Id.* ¶ 21.) In January 2023, SVBFG and SVB as co-plaintiffs filed a complaint in the North Carolina Superior Court of Wake County against the Insurers alleging that the Insurers breached the terms of the Bonds by failing to provide coverage. (*Id.* ¶ 22.) In February 2023, the Insurers removed the action to the United States District Court for the Eastern District of North Carolina. (*Id.*) FDIC-R has not asserted any crossclaim against SVBFT, let alone one claiming entitlement to proceeds under the Bonds. (*Id.* ¶ 23.)

**D.       SVB's Failure and the Chapter 11 Proceeding.**

On March 10, 2023, during the pendency of the North Carolina Action, the California Department of Financial Protection and Innovation issued an order closing SVB and appointing the FDIC as receiver.  (*Id.* ¶ 24.)

On March 17, 2023, SVBFG filed a voluntary Chapter 11 petition with the Court (the "Chapter 11 Case").  SVBFG later identified the Insurance Claim as an asset of its bankruptcy estate.  (*See* Ch. 11 Dkt. No. 261 at 66.)

During the Chapter 11 Case, the Court issued the Bar Date Order establishing that any claims against SVBFG by governmental entities must be brought by September 14, 2023 (the "Claim Bar Date").  (Ch. 11 Dkt. No. 373.)  The Bar Date Order was served on FDIC-R.  (*See* Ch. 11 Dkt. No. 457.)

On August 2, 2024, the Court entered the Confirmation Order, and the Plan became effective on November 7, 2024.  (Compl. ¶ 26; *see also* Ch. 11 Dkt. No. 1563.)  The Confirmation Order transferred SVBFG's "rights and entitlements under the [Bond]" to SVBFT "free and clear of all Liens, Claims, charges, or other encumbrances . . . ."  (Confirmation Order ¶¶ 93-94.)  It further mandated that:  (1) "all Insurance Policies which identify the Debtor as first named insured . . . shall continue with [SVBFG] unaltered"; (2) "separate and apart from the terms of any Insurance Policies, the Debtor shall turn over recovery of amounts payable and paid to the Debtor or its subsidiaries . . . to [SVBFT] with respect to . . . any Insurance Policy as a result of actions or losses that occurred prior to [November 7, 2024]"; (3) "[SVBFT] shall be responsible on behalf of [SVBFG] for monitoring and preserving the ability to maintain claims that relate to . . . actions or losses that occurred prior to [November 7, 2024] asserted under the Insurance Policies"; and (4) "nothing shall permit or otherwise effectuate a . . . transfer of the Insurance Policies and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the

Insurance Policies without the express written consent of the applicable Insurers to the extent required . . . ."  (*Id.* ¶ 108.)

FDIC-R never asserted any claim against SVBFG concerning interests under the Bonds, including prior to the Claim Bar Date.  (Compl. ¶ 27.)  The same day that the Court entered its Confirmation Order, it also entered an order (the "Setoff Order") that discharged "[a]ny claim that [FDIC-R] may have held against [SVBFG] in this bankruptcy case for which it was required to file a proof of claim in this case."  (*Id.*; *see also* Ch. 11 Dkt. No. 1380 at 33.)

The Plan provides that the Court retains its existing jurisdiction over all matters arising in or out of, or related to the underlying bankruptcy proceeding, including jurisdiction to "adjudicate, decide or resolve . . . any and all matters related to Causes of Action and Defenses that may arise from or in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan."  (Compl. ¶ 28; *see also* Plan § 15(vi).)

### E.    FDIC-R'S Motion in the North Carolina Proceeding.

On October 24, 2025, FDIC-R filed a Motion for Partial Summary Judgment on Ownership of Insurance Claim (the "North Carolina Motion") in the North Carolina Action purporting to seek to "determine the legal rights and responsibilities *among the plaintiffs*." (Compl. ¶ 30; *see also id.* Ex. C at 3-4 (emphasis added).)  Despite having filed no crossclaim against SVBFT, it seeks entry of a declaratory judgment (without identifying on what claim) that FDIC-R, as successor to SVB, is the sole owner of the insurance claim at issue in the North Carolina Action and is entitled to recover under the Bonds "without SVBFG's interference."  (*Id.* ¶ 30; *id.* Ex. C at 19.)

**F.**     **SVBFT's Adversary Proceeding.**

On November 21, 2025, SVBFT filed the Complaint against FDIC-R  in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking a declaration that (i) SVBFT is the sole beneficiary under the Bonds, (ii) the Bonds were property of the estate, (iii) FDIC-R did not assert any claims in the underlying bankruptcy proceeding, (iv) neither the Plan nor Confirmation Order authorized FDIC-R to assert late claims, (v) therefore, FDIC-R is barred from asserting any rights under the Bonds, and (vi) SVBFT is entitled to any proceeds under the Bonds.  (Compl. ¶ 42.)  On January 7, 2026, FDIC-R moved to dismiss the Adversary Proceeding.  (*See* Adv. Dkt. No. 6.)  On January 13, 2026, FDIC-R moved to withdraw the reference of Adversary Proceeding.  (*See* Adv. Dkt. No. 9.)

## ARGUMENT

Under the standing order of reference in place since 2012 in this district, bankruptcy matters are referred to the bankruptcy courts, with any order later determined to exceed a bankruptcy court's jurisdiction treated as proposed findings of fact and conclusions of law to be reviewed by the district court.  *See* Amended Standing Order of Reference, No. 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012).  There are two bases for withdrawing the automatic bankruptcy reference under 28 U.S.C. § 157(d):  mandatory withdrawal and permissive withdrawal.  In either case, it is well settled that Section 157(d) must be "construed narrowly."  *Shugrue* v. *Air Line Pilots Ass'n, Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 995 (2d Cir. 1990).  A broader reading of the statute "would eviscerate much of the work of the bankruptcy courts."  *Houbigant, Inc.* v. *ACB Mercantile, Inc.* (*In re Houbigant, Inc.*), 185 B.R. 680, 683 (S.D.N.Y. 1995).

## I.   THE STANDARD FOR MANDATORY WITHDRAWAL IS NOT MET.

Mandatory withdrawal applies only if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or

-8-

activities affecting interstate commerce." 28 U.S.C. § 157(d). The mandatory withdrawal provision is construed "narrowly" and "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Connie's Trading Corp.*, 2014 WL 1813751, at *4 (S.D.N.Y. May 8, 2014).

"[R]outine application" of settled federal law to a set of facts does not warrant mandatory withdrawal. *In re Extended Stay, Inc.*, 466 B.R. 188, 196 (S.D.N.Y. 2011). Nor is it enough to contend that claims "*might* involve novel issues" of non-bankruptcy law, *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996) (emphasis added), or "that non-bankruptcy law is dispositive," *Connie's Trading*, 2014 WL 1813751, at *4; *see also Extended Stay*, 466 B.R. at 196 (same).

A.    **The Adversary Proceeding Is a Contract Dispute That Raises Bankruptcy Law Issues.**

At bottom, the Adversary Proceeding is a dispute over who is entitled to receive insurance proceeds under the Bonds—which will be governed by the terms of the Bonds and applicable state contract and insurance laws—and whether FDIC-R waived any claim to those proceeds by failing to file a claim in the bankruptcy proceeding—which will be governed by the effect of the Bankruptcy Court's orders and applicable bankruptcy law. This alone defeats mandatory withdrawal, as no significant interpretation of a non-bankruptcy federal statute is "require[d]." *See Connie's Trading*, 2014 WL 1813751, at *4.

FDIC-R is wrong to argue that the Adversary Proceeding involves threshold questions of the interpretation of FIRREA. All its FIRREA arguments distill to a single assertion: that the Bond proceeds are assets of SVB that passed to FDIC-R by operation of law, thus FIRREA strips the court of jurisdiction and SVBFT of standing. But for FDIC-R to invoke FIRREA as a dispositive rule of decision, it must first establish that SVB owned the Bond proceeds. That is the

very question in dispute, and cannot simply be assumed to manufacture a basis for withdrawal.  If that proposition is wrong, FIRREA never comes into play.  *See In re Texaco Inc.*, 84 B.R. 911, 921 (S.D.N.Y. 1988) ("[T]he mere assertion that consideration or interpretation of a non-code federal statute may be required is not sufficient to justify mandatory withdrawal of the reference from the bankruptcy court.").

The structure of FDIC-R's FIRREA arguments further confirms that mandatory withdrawal is unwarranted because the statutory issues are not the core of the proceeding and do not require significant interpretation.  Each FIRREA provision FDIC-R invokes functions as a defense asserted in its motion to dismiss, and each defense depends on FDIC-R's threshold claim of ownership.  But FDIC-R has not established—and cannot establish—that purported ownership.

   i.  12 U.S.C. §§ 1821(j) & 1821(d)(2)(B).

Section 1821(j) provides that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  12 U.S.C. § 1821(j).  Section 1821(j)'s applicability is entirely derivative of FDIC-R's responsibilities under FIRREA.  Here and in the underlying Adversary Proceeding, FDIC-R has only pointed to one responsibility purportedly implicated by SVBFT's request for declaratory judgment:  FDIC-R's obligation to take over the assets of the failed bank and collect any money owed to it.  12 U.S.C. § 1821(d)(2)(B).  But whether the Bond proceeds are SVB assets is the central merits dispute, and it turns on the Bonds' text.  If the proceeds are not bank assets, then § 1821(d)(2)(B) is not triggered, and § 1821(j) falls away with it.

   ii.  12 U.S.C. § 1821(d)(2)(A)(i).

FIRREA's succession clause, § 1821(d)(2)(A)(i), does not present any interpretive complexity requiring withdrawal.  That section provides that FDIC, as receiver, succeeds by

operation of law to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). Again, application of the succession clause is contingent on whether the Bond proceeds are assets of SVB. The rights SVBFT asserts are not "with respect to" SVB or its assets in the way contemplated by FIRREA's succession clause because the Bonds expressly deny SVB any beneficiary interest or right of action and require payment solely to SVBFT. (Compl. ¶ 15; *see also id*. Ex. A at 11.) Further, contrary to FDIC-R's assertions, SVBFT's claim does not depend on its status as a stockholder of SVB. It depends on its status as first named Assured and contractual payee under the Bonds. Whether SVBFT held equity in SVB is irrelevant to the source of the right asserted.

iii.      12 U.S.C. § 1821(d)(13)(D).

FDIC-R's jurisdictional-exhaustion argument under § 1821(d)(13)(D) likewise cannot justify mandatory withdrawal. Section 1821(d)(13)(D) strips courts of jurisdiction over actions "seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D). FDIC-R's attempt to invoke § 1821(d)(13)(D) again assumes the point in dispute—bank ownership of the proceeds—and then uses that assumption to demand exhaustion. But administrative exhaustion is not required where the relevant claims do not concern assets of the failed depository institution. *See Fed. Hous. Fin. Agency* v. *JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012) ("[T]he word 'claim' is a term-of-art and must be construed to mean only claims that could be

-11-

brought under the administrative procedures of § 1821(d), not any claim at all involving the FDIC or, by implication, the failed bank.").

              iv.      <u>12 U.S.C. § 1825(b)(3).</u>

FDIC-R's invocation of § 1825(b)(3) provides no basis for mandatory withdrawal as SVBFT has withdrawn its request for attorneys' fees, rendering that issue moot.

**B.      Even if FIRREA Is Applicable, Only Straightforward Application Is Required.**

FDIC-R does not even attempt to explain how resolution of this dispute would require the Bankruptcy Court to engage in any "significant interpretation" of any of the FIRREA provisions it cites. *In re Bos. Generating, LLC*, 2010 WL 4288171, at *4 (S.D.N.Y. Nov. 1, 2010). There will be no opportunity to interpret FIRREA in the abstract, nor is there any "substantial and material potential conflicts" between FIRREA and Title 11 at issue here. *Id*. The Bankruptcy Court has addressed FIRREA issues just like the arguments raised by FDIC-R repeatedly in the underlying Chapter 11 case, and application of settled principles here would be routine. (*See* Ch. 11 Dkt. Nos. 1380, 1835.)

This case is nothing like *SVB Fin. Grp.* v. *FDIC*, Adv. No. 23-01137 (Bankr. S.D.N.Y. Jul. 9, 2023) (the "<u>First Adversary</u>"), which involved a novel interpretation of FIRREA's Systemic Risk Exception as a matter of first impression: SVB's closure was "the first time that the Systemic Risk Exception ha[d] been invoked in connection with the resolution of a failed bank placed in FDIC receivership," and adjudicating the claims would require determining the legal consequences of that unprecedented invocation. (*See* Opinion and Order at 1, 22-24, *SVB Fin. Grp.* v. *FDIC*, Case No. 23-cv-7218 (JPC) (S.D.N.Y. Dec. 13, 2023).) SVBFG had raised novel and complex arguments in response, based on property rights arising out of the Treasury Secretary's invocation of the Systemic Risk Exception. (*Id.* at 19-21.) The merits question here,

by contrast, is simply who owns the right to payment under the Bonds and whether FDIC-R's claims are barred or waived under the Bankruptcy Court's own orders. The Bankruptcy Court will have no occasion to "engage . . . in the intricacies" of FIRREA. *Extended Stay*, 466 B.R. at 196; *see also In re CIS Corp.*, 140 B.R. 351, 353 (S.D.N.Y. 1992) (mandatory withdrawal not triggered where "the underlying proceeding require[d] consideration of FIRREA only to determine whether the Bankruptcy Court has subject-matter jurisdiction" and "[t]he application of law to fact on the issue of subject-matter jurisdiction is straightforward").

For all these reasons, FDIC-R has not remotely met the stringent standard for mandatory withdrawal.

## II.    THE FDIC-R HAS NOT SHOWN CAUSE FOR PERMISSIVE WITHDRAWAL.

A district court may withdraw the reference from the bankruptcy court "for cause shown." 28 U.S.C. § 157(d). Though section 157 provides no definition of "cause," the Second Circuit directs district courts to consider (1) "whether the claim or proceeding is core or non-core," (2) "whether it is legal or equitable," (3) "considerations of efficiency," (4) "prevention of forum shopping," and (5) the "uniformity in the administration of bankruptcy law." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). After the Supreme Court's ruling in *Stern* v. *Marshall*, 564 U.S. 462 (2011), courts focus their inquiry at the first prong on whether the bankruptcy court has final adjudicative authority. *In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254, 262 (S.D.N.Y. 2012). Courts do not regard any one factor as dispositive. *See In re FKF 3, LLC*, 2016 WL 4540842, at *5 (S.D.N.Y. Aug. 30, 2016). "As the movant, [FDIC-R] bears the burden of demonstrating cause." *Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC* v. *Greiff*, 617 B.R. 198, 202 (S.D.N.Y. 2020) (internal quotations omitted). When applied to this case, all *Orion* factors weigh against withdrawal of the reference.

A.    **The Bankruptcy Court Has Authority to Finally Adjudicate the Adversary Proceeding.**

i.    The Adversary Proceeding Involves Public Rights.

A bankruptcy court may constitutionally issue final judgments on a claim (1) that involves a public right, (2) when adjudication of a creditor's proof of claim would necessarily resolve a counterclaim, or (3) when the parties consent. *See Stern*, 564 U.S. at 478-82, 488-99; *see also Arbco*, 479 B.R. at 262. With respect to the first category, the Supreme Court has contrasted "matters of private right, that is, of the liability of one individual to another under the law as defined" with "cases within the reach of the public rights exception," which typically arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Stern*, 564 U.S. at 489 (internal quotations omitted). Critically, the Supreme Court emphasized that "what makes a right public rather than private is that the right is integrally related to particular Federal Government action." *Id.* at 490-91 (internal quotations omitted); *In re Ladder 3 Corp.*, 581 B.R. 7, 13 (Bankr. E.D.N.Y. 2018) (same).

Here, the first *Orion* factor weighs against withdrawal because bankruptcy courts have final adjudicative authority to interpret and enforce their own orders. In *In re Ladder 3 Corp.*, the bankruptcy court considered whether it had constitutional authority to enter final judgment in an adversary proceeding to enforce a settlement agreement approved by the court in an earlier bankruptcy case. 581 B.R. at 9-11. The court held that it possessed such authority because the dispute concerned "the Court's ability to enforce an order entered in this Court," which is "integrally related to the Court's function" and therefore falls within the public-rights exception recognized in *Stern*. *Id.* at 13-14.

-14-

Similarly, here, this Adversary Proceeding concerns public rights because SVBFT's requested relief requires interpretation and enforcement of the Bankruptcy Court's Bar Date Order, Confirmation Order, and approved Plan. *First*, the Bar Date Order established a firm deadline by which all creditors—including governmental units such as FDIC-R—were required to assert any claims against the Debtor or risk forfeiture. The purpose of the Bar Date Order was to provide finality, fix the universe of claims, and permit confirmation of a plan that definitively allocated the SVBFG's assets and causes of action. *In re XO Commc'ns, Inc.*, 301 B.R. 782, 797-98 (Bankr. S.D.N.Y. 2003) ("[T]he Court emphasizes that the Bar Date Order was meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan."). FDIC-R indisputably failed to file any proof of claim by that deadline.

*Second*, the Confirmation Order implemented the Bar Date Order's effect. In the underlying bankruptcy proceeding, the Bankruptcy Court emphasized that the effect of the Confirmation Order and Bar Date Order was to discharge "[a]ny claim that the FDIC-R[] may have held against the Debtor in this bankruptcy case for which it was required to file a proof of claim in this case, including those relating to the personal liability of the Debtor." (Ch. 11 Dkt. No. 1380 at 33.) In other words, the orders extinguished any post-confirmation ability to assert rights that FDIC-R should have raised through the claims-allowance process.

*Third*, the Plan reinforces that result and expressly preserves the Bankruptcy Court's post-confirmation jurisdiction, including jurisdiction to interpret and enforce the Plan and Confirmation Order and to adjudicate any "motions, adversary proceedings, contested or litigated matters, and any other matters" relating to any claim, cause of action, demand, right,

-15-

suit, or judgment of any kind or character whatsoever owned by SVBFG and transferred to SVBFT under the Plan.  (Plan §§ 2.1.46, 2.1.120, 2.1.172, 9.5(b), 9.5(h), 15.)  SVBFT's declaratory judgment claims fall squarely within that retained jurisdiction.  SVBFT seeks a determination of ownership and enforcement of contractual rights under the Bonds that were owned by SVBFG and vested in SVBFT pursuant to the Plan and Confirmation Order.

In substance, FDIC-R's assertion of ownership over the Bond proceeds is an effort to resurrect a claim that FDIC-R was required to assert by the Bar Date but failed to do so. Accordingly, SVBFT seeks, among other relief, a declaratory judgment that the Bankruptcy Court's Bar Date Order, Confirmation Order, and approved Plan preclude FDIC-R from asserting any rights under the Bonds or advancing any late claims relating to the Bond proceeds. Resolution of that request necessarily requires the Bankruptcy Court to review, interpret, and enforce its own orders, and therefore falls squarely within the public rights exception.

The first *Orion* factor also weighs against withdrawal for the independent reason that the claim arises "between the Government" (FDIC-R) and "persons subject to its authority" (SVBFT).  This action is "integrally related" to federal government action because it challenges the manner in which a federal agency—over which Congress has waived sovereign immunity—is purporting to exercise congressionally conferred receivership powers.  *See Stern*, 564 U.S. at 489-91 (noting that cases fall within the "public rights" category of cases where the "Federal Government chose to allow it by waiving sovereign immunity"); 12 U.S.C. § 1819 (Fourth) (granting FDIC the power to "sue and be sued"); *Ensign Fin. Corp.* v. *Fed. Deposit Ins. Corp.*, 785 F. Supp. 391, 400 (S.D.N.Y. 1992) (finding jurisdiction "over plaintiffs' claims against the FDIC because Congress has waived the FDIC's sovereign immunity" under 12 U.S.C. § 1819 (Fourth)).

Importantly, this is not a case in which the FDIC-R is merely stepping into the shoes of a failed bank and asserting ordinary private-law defenses. In the North Carolina Action, FDIC-R expressly argues that it should not be treated as "acting as, or on behalf of, the insured failed bank" with respect to its claim to ownership of the Bond proceeds. (*SVB Fin. Grp.* v. *Fed. Ins. Co.*, Case No. 5:23-cv-00095-BO-RN (E.D.N.C. Feb. 27, 2023) ("N.C. Dkt."), Dkt. No. 147 at 10.) Further, both here and in the North Carolina Action, FDIC-R seeks to deploy uniquely governmental authority to override SVBFT's bargained-for rights and to foreclose judicial review of those rights altogether, all in an effort to benefit the FDIC itself. Courts have recognized that, when the FDIC-R invokes FIRREA in this manner, it functions as a government actor rather than as a private entity. *See Citizens Cent. Bancorp, Inc. v. United States*, 2017 WL 10544024, at *6 (Fed. Cl. Sept. 7, 2017) (concluding FDIC-R functions as a government entity because (i) various FIRREA provisions, including § 1821(j), indicate that "the FDIC as receiver is intended to be something more than a non-government actor," (ii) FDIC-R is "inundated in governmental control mechanisms," and (iii) there, FDIC-R was using its powers to "protect government coffers using special powers imbued by Congress to aid it in accomplishing that end"); *In re Motivation Res., Inc.*, 158 B.R. 184, 187 (Bankr. C.D. Cal. 1993) (when FDIC-R "seeks the benefits of being a government agency under FIRREA," it should be treated as a "governmental unit" under Chapter 11 of the Bankruptcy Code). The Adversary Proceeding therefore falls squarely within the public-rights framework and is amenable to final adjudication by the Bankruptcy Court.

      ii.    FDIC-R's Non-Core Based Motion Is Procedurally Premature and, Regardless, This Proceeding Involves a Core Matter.

In any event, courts in this Circuit have repeatedly held that, before FDIC-R may proceed with its request to withdraw the reference on the grounds that the proceeding is non-

-17-

core, the Bankruptcy Court must determine, in the first instance, whether the proceeding is core or non-core pursuant to 28 U.S.C. § 157(b)(3). *See In re Formica Corp.*, 305 B.R. 147, 149 (S.D.N.Y. 2004) (explaining that "any motion to withdraw would be premature until the bankruptcy court first determined whether the case was a core or non-core proceeding"); *United Illuminating Co.* v. *Enron Power Mktg., Inc. (In re Enron Corp.)*, 2003 WL 22171695, at \*2 (S.D.N.Y. Sept. 22, 2003) ("Section 157(b)(3) contemplates that the bankruptcy judge will determine, in the first instance, whether a matter is core or non-core."); *In re Enron Corp.*, 318 B.R. 273, 275 (S.D.N.Y. 2004) (same). Although core or non-core status is a factor relevant to whether withdrawal "for cause" is warranted, *see Orion*, 4 F.3d at 1101, that determination must initially be made by the bankruptcy court, *In re Enron Corp.*, 2005 WL 1185804, at \*3 (S.D.N.Y. May 18, 2005). Here, FDIC-R has not sought—let alone obtained—any determination from the Bankruptcy Court as to whether this proceeding is core or non-core. This procedural failure alone merits rejection of FDIC-R's motion.

FDIC-R also misses the mark by treating this proceeding as non-core. (*See* Mot. at 21.) Bankruptcy courts retain core jurisdiction to interpret and enforce their own orders. *In re Atari, Inc.*, 2016 WL 1618346, at \*6 (S.D.N.Y. April 20, 2016); *Travelers Indem. Co.* v. *Bailey*, 557 U.S. 137, 151 (2009). Here, SVBFT does not seek a generalized declaration of insurance coverage untethered to the bankruptcy case. Although the Bonds were issued pre-petition, the dispute over ownership of the Bond proceeds arose post-petition and necessarily requires interpretation and enforcement of this Court's own orders for reasons explained above. *In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) ("The Second Circuit and other bankruptcy courts in this district have ruled that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders.").

### B.    SVBFT Asserts an Equitable Claim for Declaratory Relief.

The second *Orion* factor—whether the debtor raises legal or equitable claims— weighs against withdrawal.  The Adversary Proceeding asserts an equitable claim for declaratory judgment of SVBFT's rights under the plain text of the Bonds and enforcement of the Bankruptcy Court's prior orders.  *See Cognetta* v. *Bonavita*, 330 F. Supp. 3d 797, 809 (E.D.N.Y. 2018) (declaratory judgment claim was equitable where plaintiffs sought to enforce subrogation, assignment, and reimbursement provision of employee benefits plan).  Regardless, the second factor—which generally concerns whether the litigants have a right to a jury trial—should be given no weight because neither party has requested a jury trial.  *Extended Stay*, 466 B.R. at 197; *In re Lyondell Chem. Co.*, 467 B.R. at 725; *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205 (E.D.N.Y. 2013) (second factor did not weigh in favor of withdrawal where neither party requested jury trial); *In re Madison Bentley Assocs., LLC*, 2016 WL 5793990, at *4 (S.D.N.Y. Sept. 27, 2016) (same).

### C.    Efficiency Is Served by Keeping the Adversary Proceeding with the Bankruptcy Court.

Concern for the "efficient use of judicial resources" weighs strongly against withdrawal.  *Orion*, 4 F.3d at 1101.  The Bankruptcy Court has repeatedly recognized that, even in non-core matters, considerations of judicial efficiency may militate against withdrawal of the reference.  *Enron Corp.*, 2005 WL 1185804, at *3.  For example, in *In re Enron Corp.*, over three years the bankruptcy court had become so "familiar with the Debtors' claims" that it could more efficiently resolve the dispute than the District Court.  *Id.*; *see also In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 196 (S.D.N.Y. 2012) (finding the bankruptcy court's familiarity with the matter weighed against withdrawal); *Arbco*, 479 B.R. at 267 (same).  As these cases demonstrate, efficiency concerns often justify denying withdrawal even where the bankruptcy court lacks final adjudicative authority.

-19-

Here, the Bankruptcy Court has presided over the underlying bankruptcy case for nearly three years. It is uniquely familiar with the operations of SVBFG, the Bank, and the relationship between the two entities. Moreover, it has adjudicated disputes involving the FDIC and various provisions of FIRREA, including a tax dispute in which the FDIC-R unsuccessfully argued that it succeeded to certain refunds via FIRREA's succession clause. (*See* Ch. 11 Dkt. No. 252; *see also* Ch. 11 Dkt. No. 1835 (adjudicating whether § 1821(j) and FIRREA's succession clause barred claims by third party against SVBFT).)

Finally, the Bankruptcy Court is "undoubtedly the best qualified to interpret and enforce its own orders." *Atari*, 2016 WL 1618346, at *14 (internal quotations omitted).

FDIC-R is wrong to argue that the "non-core nature" of SVBFT's claims is determinative of this factor. (Mot. at 28-29.) SVBFT's claims are core, and even so, efficiency would still be promoted if the Bankruptcy Court leverages its unique familiarity with the case, parties, and issues by "issu[ing] findings of fact and conclusions of law for [the District] Court['s] review." *Extended Stay*, 466 B.R. at 206. This Court has also repeatedly rejected FDIC-R's argument that withdrawal reduces the duplication of judicial work because this Court would review *de novo* the Bankruptcy Court's determinations of non-core matters. (Mot. at 28-29.) As this Court explained in *Lehman Bros.*, the prospect of *de novo* review does not undermine judicial efficiency when the bankruptcy court's analysis and management of discovery advances resolution of the dispute. *See* 18 F. Supp. 3d at 557-58; *Arbco*, 479 B.R. at 267-68 (district court would benefit from bankruptcy court's review even though the latter lacked final adjudicative authority). If the mere possibility of *de novo* review rendered proceedings inefficient, trial-level adjudication of any matter subject to such review would undermine efficiency. The law does not adopt that view, and neither should this Court.

-20-

For these reasons, judicial efficiency strongly weighs against withdrawal of the reference.

**D.    The Adversary Proceeding Is Not a Case of Forum Shopping.**

There is no basis for FDIC-R's claim that the Adversary Proceeding is "a clear exercise in forum shopping." (Mot. at 30.) The dispute over whether the Bonds provide coverage belongs in the North Carolina Court. But the dispute over whether SVBFT or FDIC-R is entitled to receive and/or retains those proceeds belongs in the Bankruptcy Court.[2] It has little to do with the insurance coverage questions at issue in the North Carolina Action, and implicates the Bankruptcy Court's orders and the rights as between SVBFT and FDIC-R. The Bankruptcy Court is best placed to interpret and enforce its own orders, and the Bankruptcy Court is uniquely familiar with SVBFG's bankruptcy and its relationship with its former subsidiary. (*See supra*.) Ironically, FDIC-R invokes judicial efficiency and forum-shopping as a basis for withdrawal, all in an effort to bypass the procedurally correct and most knowledgeable forum—the Bankruptcy Court—while simultaneously shoehorning this dispute into the North Carolina Action through a procedurally improper motion. The inefficiency inherent in FDIC-R's request is highly indicative of forum shopping.

**E.    Denying the Motion for Withdrawal Facilitates Uniformity in the Administration of Bankruptcy Law.**

Contrary to FDIC-R's assertion, maintaining the reference in this case is necessary to ensure the uniform administration of bankruptcy law. The declaratory relief SVBFT seeks turns directly on the interpretation and enforcement of orders issued by the Bankruptcy Court and will

---

[2] SVBFG has consistently maintained this position. In an August 2023 Joint Rule 26(f) Report in the North Carolina Action—submitted before the Claim Bar Date—SVBFG expressly stated that any claim to recovery under the Bonds by FDIC-R "presumably should be determined by [the] Bankruptcy Court." (N.C. Dkt. No. 39 at 5.)

-21-

resolve whether the Bond proceeds constitute property of the estate.  Requiring another court to construe and enforce those orders would risk inconsistent interpretations and fragmented administration of the estate.

Uniformity is further served by the Bankruptcy Court's extensive and sustained involvement in the Debtor's bankruptcy, as courts in this District routinely recognize that a bankruptcy court's deep familiarity with a case places it in the best position to adjudicate related disputes.  *See, e.g.*, *Lehman Bros.*, 480 B.R. at 196 (finding "the bankruptcy court's involvement with not only this proceeding but also with the administration of the entire Lehman bankruptcy" weighed against withdrawal); *Enron Corp.,* 2005 WL 1185804, at *3 (finding that "the uniform administration of the bankruptcy court proceedings weigh[s] in favor of not withdrawing the reference" where the bankruptcy court had "presided over the Enron bankruptcy cases for over three years," was "more thoroughly familiar with the Debtors claims and issues in the instant matter and all of the other Enron-related cases," and therefore was "in a better position to adjudicate them all.").  The same considerations apply here.  As noted, the Bankruptcy Court has presided over the SVBFG's bankruptcy for nearly three years and has already resolved similar adversary proceedings involving ownership disputes with FDIC-R.  Keeping this Adversary Proceeding before the Bankruptcy Court therefore promotes consistent interpretation of its orders and the coherent administration of the estate.

Accordingly, the *Orion* factors weigh against withdrawing the reference of the Adversary Proceeding.

## CONCLUSION

For the foregoing reasons, the motion to withdraw the reference should be denied.

-23-

Dated:  February 10, 2026
       New York, New York

       /s/ *James L. Bromley*
       James L. Bromley
       Christian P. Jensen
       Jared D. Ham
       Angela Zhu
       SULLIVAN & CROMWELL LLP
       125 Broad Street, New York, NY 10004
       Telephone:    (212) 558-4000
       Facsimile:    (212) 558-3588
       E-mail:  bromleyj@sullcrom.com
            jensenc@sullcrom.com
            hamj@sullcrom.com
            zhua@sullcrom.com

       *Counsel for SVB Financial Trust*